## JOSEPH RUSSELL *versus* ISAAC M'LELLAN

The equity jurisdiction given to this Court by *St.* 1823, *c.* 140, § 2, in disputes between partners, joint tenants and tenants in common, does not extend to cases between members of a manufacturing corporation.

It is not essential, in order that an act may take effect, incorporating individuals as a manufacturing corporation, that the records of the corporation should show a formal acceptance of the act, by the individuals incorporated.

Nor is it essential to the proper organization of such a corporation, that its recor *s* should show that notice of the first meeting had been given.

A purchase by only two individuals, pursuant to an agreement between them, of all the shares in such a corporation. does not dissolve the corporation, nor do these individuals become partners, joint tenants or tenants in common in consequence of such purchase.

The circumstance that such a corporation has been without officers for more than two years, and its omission to do any corporate act during that period, do not make the members partners, joint tenants or tenants in common, nor operate as a dissolution of the corporation.

THIS was a bill in equity, setting forth that the plaintiff and the defendant were owners of a manufactory in Framingham, from 1823 to the time of filing the bill ; that in 1826 they organized themselves, under an act of incorporation passed in 1813, by the name of the Framingham Manufacturing Company ; and that the business, both before and after such organization, was carried on by them jointly as partners ; and praying for an account and for general relief.

At a hearing before *Shaw* C. J. it appeared, that on February 6, 1813, (by *St.* 1812, *c.* 75,) Calvin Sanger and others were incorporated as a manufacturing company, for the purpose of manufacturing wool and cotton, in Framingham, in the county of Middlesex ; that the act of incorporation was accepted by the persons named in it, and they were organized as a corporation ; that a mill site and other real estate were duly conveyed to the corporation by deed, and thereupon they proceeded to erect and put into operation a cotton factory, and divided their capital stock into sixteen shares.

In 1823, in pursuance of a written proposal made by the defendant, the plaintiff became the proprietor of eight shares, and the defendant became the proprietor of the remaining eight shares, and they continued to be thus solely and equally

interested in the capital stock until they sold two shares to J. P. Osgood, after they had organized themselves as a corporation in 1826.

During the period from 1823 to 1826 the business of manufacturing was carried on in the factory under the direction of the parties, sundry goods were manufactured and sold, sundry parcels of stock were purchased, and moneys were advanced and received by the parties respectively, and some accounts were rendered by one to the other purporting to set forth some of their dealings. No regular corporate meetings were held during that period, but such formal proceedings as were had appear from two books produced by the defendant as the records of the corporation.

The first entry in one of these purports to be a copy of an indenture of fourteen parts, dated January 30, 1813, by which the parties thereto unite themselves into a company under the name of Calvin Sanger & Co.

The next entry, which is under date of June 1, 1813, begins thus : — " At the annual meeting of the Framingham Manufacturing Company, held " &c.  It purports that at this meeting a moderator, a clerk, an agent, a treasurer, and a first and a second auditor, were chosen.  Under date of December 20, 1813, the person chosen clerk (Samuel Murdock) is stated to have been sworn to perform the duties of clerk ; and a vote is recorded, to change the name of the company from " Calvin Sanger & Co." to " The Framingham Manufacturing Company."  This book does not contain any record made previously to this meeting, of any act of incorporation, nor of any public notice of the meeting, nor of any division of any corporate property into shares, nor of any by-laws.

June 7, 1814.  Samuel Murdock is stated to have been chosen clerk, but there is no record of his having been sworn.

June 6, 1815.  At an annual meeting Samuel Murdock is chosen clerk, and sworn the same day.

The annual meetings were held successively until and on the 9th of June, 1823, when it was voted to postpone the choice of officers until another meeting should be called for that purpose.  There was no record of any notice to

meet to choose officers, but there is an entry, " at a meeting of the Framingham Manufacturing Company, July 17, 1823, all the members being present," Samuel Woodward moderator, voted to choose officers to serve until the second Monday of June next. Calvin Sanger chosen agent ; Calvin Sanger chosen treasurer ; Samuel Murdock chosen clerk. It is not recorded that Murdock was sworn as clerk.

Then follows a record of a contract to lease the real and personal estate to Samuel Murdock.

The next entry is, " We the subscribers hereby relinquish and resign into the hands of Messrs. Isaac M'Lellan and Joseph Russell all interest and agency in the Framingham Manufacturing Company from the date hereof " ; signed Calvin Sanger, Artemas Woodward and Samuel Murdock, and dated November 7, 1823.

The next entry is, " Boston, December 31, 1826. At a meeting of the abovementioned Isaac M'Lellan and Joseph Russell, it is agreed that Joseph Russell shall act as treasurer, and Isaac M'Lellan as clerk, of the Framingham Manufacturing Company ; we being the sole proprietors of the stock of said company. Joseph Russell, Isaac M'Lellan."

The next record is a copy of an act of the legislature, passed February 6, 1813, whereby the fourteen persons who were parties to the indenture above mentioned, their successors and assigns, were incorporated as the Framingham Manufacturing Company.

Then follows, " By-laws of the Framingham Manufacturing Company made and passed this 1st day of January, A. D. 1826."

" We the subscribers, Isaac M'Lellan and Joseph Russell, having by purchase become the sole proprietors and acquired an equal interest in the real and personal estate of the Framingham Manufacturing Company &c., as appears by deeds and certificates of transfer of the several members of said corporation who held shares at the time of said purchase and transfer, recorded &c. ; also by a certificate in the book of records of the Framingham Manufacturing Company, dated Nov. 7, 1823, signed by Calvin Sanger, Artemas Woodward and Samuel Murdock, who were the proprietors of all the

6 *

Russell
*v.*
M'Lellan.

stock of said company, divided into shares, numbered from one to sixteen, and having made large additions &c. ; we the said M'Lellan and Russell do therefore hereby divide the stock of said corporation into forty-eight shares &c., and each stockholder shall receive a certificate of such share or shares as he may hold, signed by the treasurer and witnessed by the clerk " &c. These by-laws are subscribed " Joseph Russell, Isaac M'Lellan."

These by-laws contain a provision, that there shall be an annual meeting on the first Monday of January for the choice of officers.

Nov. 8, 1826. At a meeting held in Boston, M'Lellan was chosen chairman and clerk, and Russell, treasurer. M'Lellan does not appear to have been sworn as clerk.

January 1, 1827. At a meeting this day Isaac P. Osgood was chosen clerk and sworn.

At a meeting on August 3, 1827, the company adopted the *St.* 1826, *c.* 137, relative to manufacturing corporations, and declared a dividend of $ 35 on a share, which was paid by M'Lellan.

No officers appear to have been chosen in 1828.

March 15, 1828. " Resolved to continue the meeting from day to day until the accounts of the company, and those between Isaac M'Lellan and Joseph Russell could be made out and adjusted."

At meetings in January 1829, 1830 and 1831, Osgood appears to have been chosen clerk, but it does not appear that he was sworn.

No entries are made after July 4, 1831.

Neither of the parties to this suit had any interest in the real or personal estate composing the factory and its appurtenances and the machinery belonging thereto, other than what they had in virtue of the transfer of shares to them respectively transferred and recorded in the manner prescribed by law for the transfer of shares in the stock of manufacturing companies.

If the Court should be of opinion that the parties were not partners, joint tenants or tenants in common, within the meaning of the *St.* 1823, *c.* 140, and that the Court had no juris

diction in equity, of the matter set forth in the pleadings, the bill was to be dismissed ; otherwise &c.

*Sullivan*, in support of the bill, argued that the plaintiff had no remedy except in a court of equity. There are three classes of corporations ; 1. public political corporations, as towns &c. ; 2. eleemosynary corporations ; and 3. trading or manufacturing corporations, which are in effect mere partnerships in the form of corporations. If a corporation of this nature is dissolved, the property does not go to the public, or to a donor, but to the individuals who belong to the corporation at the time of the dissolution. It may dissolve itself when the corporators please, without a *quo warranto* or asking permission of the legislature. The Court can know nothing of a manufacturing corporation except from its records kept by a sworn clerk. *St.* 1808, *c.* 65, § 1. The persons named in the act of incorporation of February 6, 1813, were never organized as a corporation. There was a meeting of those individuals in June 1813, but it does not appear that they accepted the act, nor that any notice of the meeting had been given. In several instances the person chosen clerk was not sworn, and his entries therefore cannot be regarded as records. The officers chosen in 1823 were to continue in office until the second Monday in June 1824, and as no new officers were chosen at that time, if the corporation were previously in existence, it then expired. Upon the purchase by Russell and M'Lellan in 1823, they became the sole proprietors of the capital stock, either with corporate powers or as partners. It was not contemplated by the legislature that two persons only might constitute a corporation under the general statute (of 1808, *c.* 65) relating to manufacturing corporations. It was intended that there should be such a number of corporators, as that they might vote and show a majority and minority of votes. These parties dealt with each other as partners, for two years, choosing no officers during that period. They could not afterwards re-organize the corporation ; they had no authority to call a meeting. If they might do so after the lapse of two years, they might after the lapse of twenty. If then they are not a corporation, they must be regarded as co-partners   *Slee* v. *Bloom*, 19 Johns R. 456.

Russell
*v.*
M'Lellan.

*March 15th*

*S. Hubbard* and *Osgood, contrà,* cited Watson on Partn 7 ; *Pratt* v. *Bacon,* 10 Pick. 123.

PUTNAM J. delivered the opinion of the Court. The question is, whether corporators in a manufacturing corporation are partners, joint tenants or tenants in common, within the meaning of the *St.* 1823, *c.* 140. The same question was considered and determined in the negative, in the case of *Pratt* v. *Bacon,* 10 Pick. 123. We have, after hearing the ingenious argument of the counsel for the plaintiff, revised the former decision, and cannot perceive any fallacy in the reasoning or conclusion. In many things there is a similarity between corporators and partners. Corporators are interested in the profit and loss of the business, and so are partners. But there are such strong and obvious differences between them, as leave no doubt but that the statute does not embrace corporators as co-partners.

One great reason for giving a remedy in equity in the case of partners, was the inadequacy of the legal remedies which existed. But the corporation, the artificial being, may be sued by a corporator, as well as by a stranger. We are not sure however that the legislature took the case of corporators into consideration when they legislated about partners ; and if we were at liberty by construction to extend the equitable jurisdiction of this Court to cases which might fall within the reasons, though not within the language of the legislature, it would not be difficult to bring the case at bar within it. We have adopted a different course in former decisions, believing it to be according to the manifest course of legislation, that the equity jurisdiction was intended to be given with great caution. Proceeding upon that principle, we cannot suppose that by partners the legislature intended corporators.

The differences are very obvious. Partners may change the name of the firm when they please ; the name of the corporation remains until the legislature, upon the application of the corporators, shall alter it. Suits in favor of or against a partnership, must be carried on in the names of the partners ; the corporators are not named in suits for or against the corporation. There is no such joint and several liability between corporators as between partners. The responsibility

created by *St* 1808, *c.* 65, subjecting the property of corporators to the payment of the debts of the corporation, is rather an awkward approximation to, than an exact copy of the well known liability of partners.   The corporator may transfer his shares at his pleasure, and the purchaser becomes a member ; partners cannot introduce new members into the firm, without the consent of all concerned.   Corporators have .no legal interest in the corporate property.   It could not be levied on or taken by execution for the particular debt of the corporator.   The real and the personal estate of partners is held by themselves.   But we would rather refer to the other differences between corporators and partners which are mentioned in *Pratt* v. *Bacon*, than proceed with any further remarks upon that point.

The act of incorporation has been accepted, and the corporation was properly organized, and it appears that all the dealings which are the subject of enquiry between the parties, were had by them as corporators.   The plaintiff may sue the corporation.   It may not give him so perfect a remedy as might be devised, but it is the remedy provided by the law, and he must conform to it.

It was argued that the proposal of the defendant to the plaintiff to become jointly interested in this concern, each taking eight shares, made them partners or joint tenants or tenants in common *ipso facto*, upon its adoption.   But we cannot perceive that inference ; for the corporation continued.   The parties did not, by the new arrangement, acquire a legal title to the corporate property.   They had indeed joint and equal control over it, but their acts and doings must appear through the proceedings of the corporation in the due forms of the law.

The legal title in the corporation remains, notwithstanding the individual members change.   The stock, if every individual member should decease at the same moment, would be distributed according to the statute of distributions or according to the wills of the individuals deceased.   The legal representatives of the deceased members would have authority, by law, to manage the corporation, and no dissolution would in such case take place.

Russell
*v.*
M'Lellan.

Russell
*v.*
M'Lellan.

It is said that the parties held for two years without doing any corporate act. If it were so, we cannot perceive that they would become partners instead of corporators.

If the shares of the corporation should all centre in one person, and the forms of proceeding or by-laws should prescribe acts to be done by two or more, we do not perceive any difficulty in the sole owner's making sale of shares, so as to conform to the letter of the rule. There is, we think, no evidence of a dissolution of this corporation.

Upon the whole, we are of opinion that these parties are not partners, tenants in common or joint tenants, and that the bill must be dismissed.